Thompson v. Allbaugh 17-6127. May it please the court, Robert Jackson on behalf of appellant petitioner Kenneth Wayne Thompson. The jury verdict in this case is simply not worthy of confidence. The two issues for which COA have been granted are one, whether the evidence was constitutionally sufficient to prove whether the jury gave substantive weight to a co-defendant confession that was erroneously admitted under the guise of impeachment. Turning to the sufficiency issue, Mr. Thompson concedes that Jackson v. Virginia is an extremely deferential standard, but he asked the court to keep in mind here that that standard is tempered by the state's burden of proof, and that's beyond a reasonable doubt. And the question is whether sufficient evidence was presented at trial to prove Mr. Thompson's guilt beyond a reasonable doubt of second-degree murder. And Mr. Thompson contends that one, the state failed to prove that he was the driver of the vehicle in question from which the shot was fired, and two, the state failed to prove that he acted with the depraved mind standard or that he had knowledge that his co-defendant acted with that standard. Failure under either element renders the evidence insufficient to sustain his conviction. I'd point out that the only witness to identify Mr. Thompson in this case was a gentleman named Eric Thrower, and Eric Thrower testified. He testified one full morning in this case, and he was directly asked, can you identify the occupants of the vehicle that shot Mr. Ingersoll? And he said no. And then cross-examination occurred, and then there was a break for lunch with redirect to occur afterwards. During that lunch break, Mr. Thrower got stoned on marijuana to such extent that he could not continue his testimony, and his redirect examination had to be continued to the next day. Overnight before his redirect examination, he communicated with the victim's father in the case, and he spoke with the victim's father in the case, and he denied talking about the case, but he did admit talking about how the trial was going. I don't know what the difference is between the two, and that the victim's father had emphasized to him to tell the truth. He came back for the redirect examination, and now during redirect, he could identify Mr. Thompson as the driver of the vehicle from which the shot was fired. And all of that that you've just related was the jury got that information, right? The jury did not receive, was not privy to the at-bench conference concerning the communication between Mr. Thrower and the victim's father. So the jury knew he changed his testimony, testified one way one day, and then testified a He also testified the second day during recross examination that he admitted lying under oath the first day. He also testified that at preliminary hearing when he previously made an identification, that identification wasn't based on his personal knowledge, but was based on what the second passenger in the car had told him. That was Dante Newton, and Dante Newton testified at the car from which the shot was fired. And Dante Newton had gone to school with Mr. Thompson and his co-defendant brother Kenneth Richardson, and he should have been able to identify either of them if he had seen who was in that car. I guess so you and you that there was a mistrial request and right and that's denied, so wasn't there a we denied a COA on the mistrial issue? Am I smoking of the marijuana and the you know talking to the talking to the father of the victim, those seems seem like issues that you would bring up in a mistrial, but it seems to me the issue you're talking to us about now is really about his credibility, Thrower's credibility, since he you know the jury could judge it, but you're saying the jury didn't even have those facts to judge his credibility with, is that what you're saying? The jury was aware that he changed his testimony. He was do they did they the jury was not aware of the smoking dope over the lunch hour and the phone call to the father or any basis for that? That was very briefly inquired into on cross-examination, which drew an objection from the state, and the trial judge instructed defense counsel to move on. So they had a vague vague knowledge that there was some communication with the victim's father. What about the jury did not know about smoking the dope? They were aware they were okay cross-examined about that. So why doesn't this go to credibility then? Because the jury knows why they're gonna judge Thrower's credibility and they've got a lot there to to process I must say, but but how does that have to do with the sufficiency at this point? It goes to sufficiency because it goes to the weight of the evidence. We can't sustain the conviction because there was some evidence indicate indicative of guilt. We have to have enough evidence to prove that guilt beyond a reasonable doubt and and I think this is a good segue into the second issue. This case is is obviously weak. The the more culpable of the two defendants, the defendant to the state's theory was was the actual shooter. He was acquitted at his severed trial so this evidence is inherently weak and because that evidence is weak the state had to engage in some deception or some trickery with respect to this witness Alicia Banton. Alicia Banton, Alicia Banton had been down to the police station right after the crime and was investigated or interviewed by Detective Lord and she told Detective Lord, Kendall Richardson and Kenneth Thompson that came to my apartment the morning after the shooting, a few hours after the shooting and Mr. Richardson, he was acting strange. He was pacing back and forth. He asked to speak to me. We went in my bedroom. Mr. Richardson told me, quote, I just shot a dude in the head and I don't know whether he is dead or alive. Subsequent to that statement from Witness Banton, she recanted what she said by trying to go down to the police station, set the record straight, but by the time of preliminary hearing she was subpoenaed as a material witness and she shows up for preliminary hearing with her own lawyer and their record is made that she went down to the police station. She did make those statements but now she recants them and she had two motives for making those statements. One, there was evidence in this case implicating a Mr. Equan England. In fact, a shell casing was found in his car that was seen across the street from where the shooting occurred that matched the shell casing from the purported murder weapon. The murder weapon was never was never obtained but there was another shell casing. She wanted to protect her friend Equan England. Again, let me interrupt and ask if any of these facts that you've just recited to us, were they not made known to the jury? The jury was aware that Miss Banton had these motives for fabricating her story to the police. That was made known. And they knew she changed, she allegedly told Detective Lord one thing and then changed her story and said something else? That's correct. Okay, so I guess I have the same question that Judge Moritz just asked, which is, it feels as if what you're asking us to do is to substitute our own judgment of the credibility of these witnesses for the jury's assessment of the credibility. With respect to issue two, we're not talking about credibility. We're talking about impeachment evidence. We have this witness, Witness Banton, who's called and paradoxically, she becomes the state's star witness. She's referred to in closing arguments as the linchpin, as knowing who caused the murder. Yet this impeachment evidence, her impeachment, should have added nothing to the state's case. There should have been no weight given to that because the impeachment evidence can't be considered legally for substantive purposes. And the problem here is the same as in Bruton, that there's some context in which the risk that the jury will not or cannot follow instructions is so great and the consequences of failure so vital to the defendant that the practical and human limitations of the jury system cannot be ignored. The state portrayed Mr. Richardson's confession or purported confession to Alicia Banton as implicating Mr. Thompson. In closing arguments, they say he confesses to Alicia Banton. I just shot a kid in the head. And what does that do? That implicates Mr. Thompson as the driver of that silver or that white Camaro that Destiny Dotson saw them in. Alicia Banton knows that Mr. Thompson and his brother shot and killed John Ingersoll. And that's what she told you on the stand. Did you raise the, not the confrontation issue, but essentially you're arguing a fundamental fairness issue, at least on the second aspect of your argument. And then the first, the impeachment, that it was admitted improperly, I guess, as impeachment evidence. You made state law arguments on those for the OCCA. I don't see where you exhausted your constitutional arguments here, the due process issues. Okay, I'd like to talk about the the first subclaim about the impeachment. Right. Being admitted for. It looks to me like you made a state law argument about the evidence, impeachment evidence, being inadmissible on that. There were actually four pages in the in the direct appeal brief that talked about Clifton and Woody and these federal cases and the Moorland case and also the Supreme Court case Bridges versus Wixon that had to deal with a deportation case based upon unsworn testimony. I didn't see that you ever made an argument though about the, I didn't see the due process clause mentioned or the Constitution or anything. Maybe I'm missing, maybe I missed that. I believe it's federalized. Are you talking about now about your fairness, fundamental fairness issue? No, I'm still talking about impeachment. Okay. Under the guise of impeachment. Because I can see that on the fundamental fairness, but maybe I missed something on your impeachment. United States versus Clifton is cited in there. That's this court's case and there there's that language that generally this court does not review impeachment issues for constitutional violations. Generally, but footnote six talks about United States versus Shoup wherein if the impeachment evidence was sufficient to sustain a conviction on its own and here it was represented as such that a due process violation results. And I'll also point the court's attention to United States versus Woody where the impeachment evidence consisted of merely evidence of violent character in a because the government as they did here urged in closing argument for the jury to give that impeachment evidence substantive weight. Well Shoup, if I'm thinking about the correct case, that would, in that case it was the prosecutor who recited the the evidence and and they found that essentially that evidence he recited would have been sufficient to sustain the conviction. But here we don't have, you can't make the argument that this would have been sufficient to sustain the conviction because I mean it was not Thompson's conviction. The statement wasn't about Thompson, it was about Richardson. It wasn't about Thompson, right? But the only statement you're referring to here. And the state represented. I mean just to distinguish it from Shoup, which seems to be what you're relying on primarily. The state argued that Richardson's confession implicated Mr. Thompson and showed that he and. Well I understand that. I'm just saying the only case I see that you're really strongly rely on is Shoup and that's an entirely different situation where the prosecutor was reciting evidence that on its own would have been sufficient to sustain the conviction. And I think this. How would this evidence have been sufficient to sustain the conviction against Mr. Thompson? One, I think it's directly inculpatory of him given the purported circumstances. Two, there's also this. It's certainly inculpatory but. There's this issue of the videotape that's on the court record. It's unclear what portions of this video were played. But there's additional statements in the video that are highly problematic. So problematic that the trial judge stops the playing of the video. And Alicia Bannon represented Detective Lord. Quote, my brother can take me down because he was in the car. My brother and one other person knows. And that video was played for the jury. It was cumulative. It was additional impeachment. My time's about up so I would like to mention that with respect to the the first aspect of the claim, the impeachment evidence or the substantive evidence under the guise of impeachment, I believe this court can review that claim de novo. As for the rest of the OCCA's analysis, that was grounded in its finding that this purposes. In light of the record, that that finding was completely wrong. It was an unreasonable finding under 2254 D2. And that opens this the door to this court's analysis of the case. Thank you. May it please the court. I'm Sherry Johnson with the Oklahoma Attorney General's Office for Respondent. I first like to address one issue and I think counsel corrected himself, but he seemed to indicate that the jury never heard about the Mr. Thrower's phone call with the victim's father. And that testimony is in appendix page 799 where Mr. Thrower on cross-examination did state that he spoke with the victim's father the night before and the father told him to tell the truth and be consistent. Was there an objection at that point? I think that's what he said. Kind of shut down at that point. I do not recall, your honor. Okay, that's the way I understood what he was suggesting. I would also like to point out as far as this sufficiency claim, counsel claims that the only witness that identified petitioner was Mr. Thrower. However, the Fritzes that night testified that she saw a petitioner and his brother leave in a white vehicle leave the parking lot at Fritzes shortly before it closed around 3 a.m. and they were the only two people in the car. We have a security guard that was working in the parking lot at the OK Corral right in front of where the shooting happened that observed, that heard the shot, looked up, saw only two vehicles on the road, the victim's vehicle, and a white what he described as a Camaro or a Firebird. So that corroborates the Mr. Thrower's identification of and Mr. Newton's identification of the shots coming from a white vehicle. Didn't the security guard also see a purple vehicle that turned out to be owned by Mr. England? He did not identify a vehicle as being owned by Mr. England. On cross-examination, he stated that he may have seen a purple vehicle across the street at the Walmart parking lot, but what's important about that is that the crime scene was the street and none of the eyewitnesses identified a purple vehicle as being associated with the shooting. Also, in Detective Lord's testimony, he indicated that during the shooting investigation, the officer shut down the street and were diverting traffic into the Walmart parking lot. So it's entirely possible there were a lot of cars in the Walmart parking lot. We don't know that one of them was this purple Crown Victoria. Also, in regards to the shell casing that was found in this purple Crown Victoria, as Detective Lord testified, we don't know when that shell casing was fired. We don't have a murder weapon that was recovered. There was no gang member who was known to provide guns to other gang members and the jury heard Detective Lord testify. We know Mr. England had possession of that firearm at some point. However, we do not know when that shell casing was fired. With regard to the impeachment evidence, petitioner has failed to rebut the Court of Criminal Appeals finding that and the District Court's finding that the evidence was offered for impeachment purposes and not to prove the truth of the matter asserted. The prosecutor did argue for purposes of the merits in closing, didn't he? Your Honor, yes, he did make an isolated comment. However, our argument of prosecutorial error is waived because it was never raised on direct appeal and it appears now that petitioner is attempting to bootstrap this unpreserved claim onto his preserved claim and claiming that actually improper prosecutorial argument was made. He's asking this court to assume that comment was improper, but the way that you assess prosecutorial argument is in context and within all of the record and if this court were to the state's second closing was in response to a direct response to defendants closing arguments and it was also made during a discussion of the evidence. So I don't believe that this isolated comment affected the fundamental fairness of the trial if this court should choose to review that claim. Also, the admission of this impeachment evidence did not violate due process because of the admonishment given by the trial court both orally before the video was played and also during the the written instruction that was issued. Excuse me. Did the defendant make a constitutional argument to the CCA with respect to the impeachment evidence or just an argument based on the local rules, the state evidentiary rules? I believe your honor you're asking me about the guise of impeachment claim. On direct appeal he raised a strictly straight law issue. It appeared he may have cited to the federal rules but his court found that he could not independently prevail on that guise of impeachment claim because the admission or exclusion of impeachment evidence is a non-constitutional issue. So that one you agree is not exhausted then? I'm sorry? That one is not exhausted in your in your view? Yes ma'am, yes your honor. I'm not sure if you talked about that but I know you did. Is I believe he did raise the under his due process claim where he argued that the admission of some evidence can be unduly prejudicial and I believe that the Court of Criminal Appeals and the District Court both recognized the probative value of Detective Lord's testimony and that videotape because of the great discrepancy between Miss Banton's recollection of how her police interview went and Detective Lord's testimony about that police interview. The video if this court has had a chance to review it speaks for itself. Miss Banton testified and gave an account of an interrogation that you know one of the detectives is pounding on the table and she's being pumped for information. The video itself shows a much different atmosphere and it actually supports Detective Lord's recollection that Miss Banton presented herself at the police station to provide information and was volunteering information and the only that really that if you review the record review the video the only questions that the detectives are asking are to clarify and summarize to be sure they're understanding the information that Miss Banton is offering. This evidence was incredibly probative and it helped the jury make a credibility determination about these witnesses and therefore it's in the introduction of this evidence was not a violation of due process. Was it a defendant's confrontation clause rights to allow the video to include the statement made by the severed co-defendant about allegedly to Miss Banton? Your Honor I'm not positive that the video contained that testimony. Was her statement, I guess it was Detective Lord's. It was introduced through the defendant's confrontation clause rights. No, Your Honor. Under actually under this court's case United States v. Clark we're advised to use to view Bruton through the lens of Crawford and in doing so we consider whether the challenge statement is testimonial. I believe there's an older case Smalls where that's also set forth in a footnote. In a case that I don't believe was decided when these briefs were pending Ohio v. Clark before the Supreme Court 2015 and that's the case that was cited in the district court's opinion denying relief. A statement cannot fall within the confrontation clause unless its primary purpose was testimonial and as the district court found Mr. Richardson was not attempting to create trial testimony when he made the statement in his friend's bedroom an hour after the murder that I just shot a dude in the head and I don't know if he's alive or dead. Well I think he's suggesting that it's well it's double hearsay. I think he's trying to suggest that it's her statement, her Barton statement. Maybe I'm getting mixed up here. Yeah is it or I said Barton it's Blanton right? Banton. I mean it's a double hearsay situation we're talking about here and I think he's suggesting that clearly her statement to Lord was testimonial but Richardson's confession to Banton which was a double hearsay aspect of it was not. I'm not sure. I was confused by that I would say that Richardson's statement to Banton could also be considered an admission a statement against interest which would eliminate the hearsay and within hearsay issue. But there was no hearsay objection so we'll never know what the ruling would have been on. I agree I think the important thing here is that the statement was not testimonial therefore it didn't implicate the confrontation clause and I think I'll stand on the the earlier arguments in my brief the admission of this evidence also didn't violate the due process clause. Well Banton's statement, I'm thinking it's her Banton's statement to Lord would have been admissible because she testified at trial. Yes your honor. So in terms of double hearsay both would have been admissible one because of it was testimonial or not. Yes your honor and I believe that in the multiple briefs and in the district court opinion the district court cited footnote 9 and Crawford pointing out that the confrontation clause does not bar the admission of testimonial statements for purposes other than truth proving the matter truth of matter asserted. So it was completely proper for impeachment purposes. Banton's statement so we're clear on the testimonial statement. If there are no further questions. There are no further questions. Thank you your honors. I would ask that you please affirm the district courts denial of habeas relief. Thank you. Thank you. Did he have time? No. Okay well then we will take this matter under advisement and counsel are excused.